

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

TJS:ACG  *271 Cadman Plaza East*
F. #2015R1548  *Brooklyn, New York 11201*

October 24, 2017

By ECF

The Honorable Allyne R. Ross
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Rakien Figueroa
                  Criminal Docket Nos. 08-749/15-495 (ARR)

Dear Judge Ross:

        The government respectfully submits this letter in advance of sentencing in the above-captioned matter. For the reasons set forth below, the government requests that, for the defendant's conviction at trial of being a felon in possession of a firearm, a sentence of 120 months' imprisonment should be imposed. That sentence, 120 months' imprisonment, is the effective advisory United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range, as correctly set forth by the U.S. Probation Department in the Presentence Investigation Report ("PSR"), and the statutory maximum for the defendant's conviction under 18 U.S.C. 922(g)(1). The government further requests that, as recommended by the Probation Department, the defendant should serve a consecutive sentence of 18 months' imprisonment for the defendant's violation of supervised release stemming from his trial conviction.

        I.        Background

        The defendant has a lengthy history before this Court. On November 16, 2009, the defendant was convicted following trial of one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. 846, 841(a)(1) and (b)(1)(A), a Class A felony, and sixteen counts of distribution and

possession with intent to distribute cocaine base, in violation of 21 U.S.C. 841(a)(1).[1]  On March 2, 2010, this Court granted the defendant's motion for acquittal on the conspiracy count, and on June 7, 2010, sentenced the defendant on the sixteen counts of distribution and possession with intent to distribute cocaine base to 48 months' imprisonment in total, with a three-year term of supervised release to follow.

Following his release from prison, the defendant violated the terms of his supervised release.  On March 19, 2015, the defendant pleaded guilty to three violations of supervised release:  (1) failure to notify a probation officer at least ten days prior to any changes of residence or employment; (2) failure to participate in an outpatient and/or inpatient drug treatment or detoxification program approved by the Probation Department; and (3) failure to answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.  The Court sentenced the defendant to twelve months' imprisonment for these violations, and a three-year term of supervised release to follow.

On his second term of supervised release, the defendant committed the offense conduct underlying the instant conviction.

On August 18, 2015, from an unmarked car a few car lengths away, Officers Ward and Goddard of the New York City Police Department ("NYPD") witnessed the SUV that the defendant was driving block traffic and then park in front of a fire hydrant and continue to impede the flow of traffic.  (See Op. and Order Denying Def.'s Motion for a New Trial (Mar. 21, 2017) (ECF No. 108) ("Order") at 2.)

As the defendant exited the vehicle, the officers drove by the defendant in their unmarked car.  (Id.)  Officer Ward observed a black clip in the defendant's waistband that looked like a gravity knife or other weapon.  (Id.)  Officer Ward further observed the defendant remove the object from his waistband and, in a concealing and furtive manner, place the object inside of the SUV from the driver's side.  (Id. at 2-3)  Officer Goddard recognized the defendant from a poster he had seen in a precinct and informed Officer Ward that he believed the defendant was "wanted-wanted," that is, wanted for a serious crime.  (Id. at 2.)  The officers also smelled marijuana in passing the defendant.  (Id. at 2.)

---

[1] Prior to this conviction and among other criminal convictions, on April 23, 2002, the defendant was convicted upon a plea of guilty to assault in the second degree, a Class D felony, in violation of NYPL § 120.05(2), which requires that the defendant intended to cause physical injury with a deadly weapon or dangerous instrument and caused such injury.  The defendant was sentenced to 30 months' imprisonment.

2

The officers made a U-turn and returned to the SUV, where they pulled up behind the SUV and exited their vehicle. As the officers approached the defendant and another individual, who they later identified as Anthony Womack, they encountered a potent marijuana smell emanating from the SUV and the defendant. (Id. at 3.) When Officer Ward approached the defendant and frisked him, the defendant informed Officer Ward that he, the defendant, had marijuana on him. (Id.) Officer Goddard frisked Womack and detected that Womack had a gravity knife in his pocket. Officer Goddard, however, did not recover the knife at that time out of concern for officer safety. (Id.)

Officer Ward then approached the front passenger side of the SUV, and when he opened the front passenger door, he smelled marijuana again. (Id.) At that point, the defendant fled from the rear of the SUV. The officers chased after the defendant. Meanwhile, Womack approached the SUV from the front passenger side and began removing items from it. Womack appeared to hand some of the items to an unidentified woman who was passing by. (Id. at 4.)

The officers eventually apprehended and handcuffed the defendant. (Id.) As the officers brought the defendant back towards the SUV, the defendant shouted to Womack, "Did you get it out? Did you get it out?" (Id.) Womack responded with a not knowing look. Officer Goddard proceeded to arrest Womack. (Id.)

The officers searched the defendant and Womack. They recovered a gravity knife from Womack and crack cocaine from the defendant. (Id.)

Officer Ward returned to the SUV to resume his search. During the course of his search, Officer Ward recovered a firearm from the front driver's side of the vehicle, between the driver's seat and center console. (Id.) The firearm, a 9-millimeter black, semi-automatic handgun, had a black waistband clip on it. (Id.)

The officers transported Figueroa, Womack, and the SUV from the scene of arrest to the police stationhouse. (Id.) There, Officer Ward continued the search of the SUV. From the area of the center console in the SUV (next to where the firearm was found), Officer Ward recovered a scale and baggies, multicolored cards (including blank credit cards), and a skimmer device. (Id. at 5.) Included with the multicolored credit cards was a credit card in the defendant's name and with the defendant's photograph on it. (Tr. of May 31, 2016 Trial ("Trial Tr.") 64:11-65:13.) Officer Ward told the defendant what was recovered from the SUV, and the defendant responded, "You could get me for the weed and the crack, but the rest of that stuff isn't mine." (Order at 5).

3

On August 28, 2015, the defendant was charged with one count of being a felon in possession of a firearm. (See Compl., ECF No. 1.) Following his arrest on September 22, 2015, a grand jury returned a one-count indictment against him, likewise charging him as being a felon in possession of a firearm. (See ECF No. 4 (arraignment), 14 (indictment).)

The defendant moved to suppress all of the physical evidence seized in connection with his arrest as well as his oral statements to police. On January 25 and 26, 2016, the Court held a suppression hearing, where both Officers Ward and Goddard testified and the government played video recordings that were obtained of the defendant's arrest and of his post-arrest statement. (ECF No. 38-39.) The Court found the officers' testimony credible and denied the defendant's motion to suppress in its entirety. (See Order at 2.)

The defendant proceeded to trial, which was held from May 31, 2016 through June 2, 2016. At trial, the government played for the jury the video recording of the defendant's arrest. Officers Ward and Goddard also testified and consistently with their suppression hearing testimony. (Order at 5.) Among other things, the government also introduced testimony from a criminalist at the Office of the Chief Medical Examiner. (Id. at 6-7). The criminalist testified that DNA recovered from the firearm matched the defendant's DNA. Following the close of the government's case, the defendant also put on a case, calling the Assistant District Attorney, who had written up the complaint against the defendant on behalf of the Brooklyn District Attorney's Office. (Id. at 7.) At the conclusion of the trial, the jury convicted the defendant of being a felon in possession of a firearm. (Id.)

Following his conviction, the defendant was appointed new counsel, who filed a motion for a new trial based on a claim of ineffective assistance by Figueroa's lead trial counsel. (Id.). The defendant also filed a pro se submission in support of this motion, requesting a new trial based on ineffective assistance of his suppression hearing counsel, as well as a judgment of acquittal based on the purported insufficiency of the evidence presented at trial. (Id.). The Court denied these motions. (Order at 17-19.)

II.   Guidelines Calculation

The government submits that the Guidelines calculation set forth below and in the PSR should be applied to the defendant:

| | |
|---|---|
| Base Offense Level: (§ 2K2.1(a)(2)) | +24 |
| Plus: Obliterated Serial Number (§ 2K2.1(b)(4)) | +4 |
| Plus: In Connection with Another Felony Offense | +4 |

Total Offense Level:                                                                                              32

Based on a total offense level of 32 and a criminal history category of V, the provided imprisonment range from the Sentencing Table within the Guidelines is 188 to 235 months.[2] (PSR ¶¶ 8-26, 52.) However, the applicable statutory maximum results in a restricted Guidelines term of 120 months' imprisonment, which the government requests that the Court impose.[3] (Id. ¶ 52.)

As the Court has found that "[it] is clear that the government will be able to prove at the defendant's revocation hearing that the defendant knowingly possessed a firearm based on his 2016 jury trial conviction, in violation of charge two of the Violation of Supervised Release report dated August 26, 2015," the defendant should be required to serve an additional and consecutive sentence. (Order dated Aug. 28, 2017.) As set forth in the Violation of Supervised Release report dated August 26, 2015, the Guidelines applicable to this violation provide that "the Court shall revoke supervised release . . . and impose a custody term," specifically, a "custody term of . . . 12-18 months." (VOSR Report at 12 (Aug. 26, 2015).) The government agrees with the recommendation of the Probation Department that, for the defendant's violation of supervised release, the Court should impose

---

[2] In United States v. Booker, 125 S. Ct. 738, 743 (2005), which held that the Guidelines are advisory, the Supreme Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining a sentence, but also may tailor the sentence in light of other statutory concerns. See 18 U.S.C. § 3553(a). After Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).

In Gall v. United States, 128 S. Ct. 586 (2007), the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall, 128 S. Ct. at 596 (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Id. at 596-97 (citation and footnote omitted).

[3] "U.S.S.G. § 5G1.1(a) expressly provides that '[w]here the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.'" United States v. Bennett, 839 F.3d 153, 162 (2d Cir. 2016), as amended (Oct. 7, 2016) (quoting U.S.S.G. § 5G1.1(a)).

5

"a custodial term of 18 months to run consecutive to any other sentence imposed . . . ." Id. at 13-14.

### III.   The Appropriate Sentence

The defendant, on his second violation of supervised release before this Court and his fifth felony conviction, should receive a Guidelines sentence of 120 months' imprisonment for his felon in possession conviction, and a consecutive sentence of 18 months' imprisonment for his violation of supervised release. The appropriate factors under 18 U.S.C. § 3553(a) support imposing such a sentence, which would be sufficient but not greater than necessary to reflect the nature and circumstances of the offense and the history and characteristics of the defendant, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct. See 18 U.S.C. § 3553(a)(1), (2).

Here, the Guidelines accurately reflects the seriousness of the defendant's conduct. See 18 U.S.C. § 3553(a)(1), (a)(2)(A). Importantly, the crime of being a felon in possession of a firearm reflects a continuing disrespect for the law and raises an "inherent risk of violence." United States v. Munlyn, 607 F. Supp. 2d 394, 399 (E.D.N.Y. 2009) (Bianco, J.); see also United States v. Dillard, 214 F.3d 88, 94 (2d Cir. 2000) (finding that "possession of a gun by its nature gives rise to a risk of its use in violence"). Further, there is no question that the defendant committed this serious crime. Despite the defendant refusing to take responsibility for his actions in his sentencing submission and in his letters to the Court, the evidence at trial overwhelmingly established his guilt beyond a reasonable doubt. Two NYPD officers testified credibly at both a suppression hearing and trial concerning the circumstances of the defendant's arrest, testimony that was further supported by a video recording of the arrest and testimony from an OCME criminalist that the defendant's DNA matched the DNA recovered from the firearm. Worse for the defendant, he possessed this semiautomatic, loaded firearm on his second term of supervised release. This is a clear and brazen crime, which calls for a substantial sentence.

Moreover, the remaining offense conduct which contributes to his Guidelines range was more than proven by a preponderance of the evidence. See United States v. Cordoba-Murgas, 233 F.3d 704, 708 (2d Cir. 2000) (finding that "preponderance of the evidence" is the applicable burden of proof when a sentencing judge is asked to assess disputed facts relevant to sentencing").[4]

---

[4]   It bears mention that "[t]he district court is not required, by either the Due Process Clause or the federal Sentencing Guidelines, to hold a full-blown evidentiary hearing in resolving sentencing disputes." United States v. Slevin, 106 F.3d 1086, 1091 (2d Cir.

First, that the defendant possessed a firearm with an obliterated serial number under U.S.S.G. § 2K2.1(b)(4) was established by Officer Ward's testimony at the suppression hearing as well as by the firearm itself, which was admitted into evidence at trial. (See Tr. of Jan. 26-27, 2016 Suppression Hr'g ("Suppression Tr.") 78:1-6 (noting that the absence of a serial number on the firearm is apparent from the exterior of the firearm); Trial Tr. 58:15-61:5 (admitting into evidence and publishing to the jury the firearm with the defaced serial number).)[5]

Second, that the defendant possessed a firearm and ammunition in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B)—specifically, possession with intent to distribute marijuana, attempted possession with intent to distribute marijuana, or aiding and abetting possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), 846 and 18 U.S.C. § 2—was established by Officer Ward's testimony at the suppression hearing and trial, the defendant's own admissions, and the items of the defendant's recovered from the SUV.

---

1996). Indeed, "a district court 'is under no duty to conduct a full-blown evidentiary hearing in each instance where information in a presentence report is challenged. Nor does the convicted defendant have an absolute right to demand that kind of hearing.'" United States v. Peterson, 896 F. Supp. 2d 305, 319 (S.D.N.Y. 2012) (quoting United States v. Lee, 818 F.2d 1052, 1056 (2d Cir. 1987)). See also United States v. Litwok, 611 Fed. App'x 12, (2d Cir. Apr. 28, 2015) (finding that no Fatico hearing was required where the defendant, in a letter submission, "objected to any enhancement based on allegations of uncharged conduct").

Sentencing courts also may consider "the widest possible breadth of information about a defendant." Pepper v. United States, 562 U.S. 476, 488 (2011). In this inquiry, for example, the Court "may consider hearsay statements, evidence of uncharged crimes, dropped counts of an indictment[,] and criminal activity resulting in an acquittal in determining sentence." United States v. Persico, No 10-CR-147 (DLI), 2017 WL 3054779, *2 (quoting United States v. Romano, 825 F.2d 725, 728 (2d Cir. 1987)).

[5] Given that the defendant has a criminal history category of V, if he receives the four offense level points from either possessing a firearm with an obliterated serial number under U.S.S.G. § 2K2.1(b)(4) or possessing a firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B), whether he receives the remaining four point enhancement from the other may be a largely an academic issue with respect to the Guidelines calculation, as, at an offense level of 28, the applicable range in the Guidelines' Sentencing Table is already over the statutory maximum of 120 months' imprisonment.

7

To begin with, the defendant admitted to the possession of both marijuana and crack cocaine at the time of his arrest. In its order denying the defendant's motion to suppress, the Court found Figueroa's statement to Officer Ward, in sum and substance, "'You could get me for the weed and crack, but the rest of that stuff isn't mine,'" to be admissible. (See Op. and Order Denying Def.'s Motion to Suppress (Feb. 26, 2016) (ECF No. 45) ("Suppression Denial") at 17-18.) Further, Officer Ward recovered "a scale and baggies" from the center console of the vehicle. (Order at 5.) Given the defendant's prior history of narcotics distribution convictions and that the defendant was in possession of narcotics at the time of his arrest, the use of and the purpose for the scale and baggies is readily apparent. Thus, the scale, which is typically used to weigh quantities of marijuana for sale, and the baggies, which are typically used to contain quantities of marijuana for sale, strongly demonstrate that the defendant is culpable by a preponderance of the evidence for committing, attempting to commit, or aiding and abetting possession with intent to distribute marijuana.

Moreover, the evidence before the Court establishes that the defendant knew of and, at a minimum, constructively possessed the scale and baggies in the SUV. As further established at the suppression hearing, in addition to the "drug paraphernalia (including a scale and baggies), [Officer Ward also recovered] blank credit cards, and a skimming device from the center console of the vehicle" Figueroa was in. (Order at 5.) At trial, the government admitted into evidence that one of the credit cards recovered from the center console of the vehicle was a credit card in the defendant's name and with his photograph on it. The defendant's personal credit card being found among this aforementioned contraband—specifically, the scale and baggies—establishes the defendant's knowledge of those items in the center console of the vehicle. (See Trial Tr. 64:11-65:13.) Moreover, that the defendant, without anyone else in the SUV, drove the SUV with this knowledge, demonstrated that he had at least constructive possession of the scale and baggies under the Court's jury charge. (See Tr. 462:8-463:11.)

While the government does not seek to enhance the defendant's Guidelines based on his possession of blank cards (access devices) and the skimmer (device-making equipment), see 18 U.S.C. § 1029(a)(4), the defendant's possession of these items is relevant to the Court's analysis under 18 U.S.C. § 3553(a)(1), (a)(2)(A), and further supports the sentences of incarceration the government requests. The government submits that the Court should conclude by a preponderance of the evidence that the defendant, whose own credit card was with the blank credit cards and the skimmer device, knew of and, at a minimum, constructively possessed this contraband.

In addition, the Guidelines range fairly reflects the history and characteristics of the defendant. See 18 U.S.C. § 3553(a)(1). As noted above, the defendant has multiple previous convictions, and has served significant jail time in the past. Most recently, the defendant served 47 months' imprisonment for his possession with intent to distribute conviction before this Court and one-year imprisonment for his previous violation of supervised release. (PSR ¶ 23.) That the defendant would still be found in possession of a firearm given that he was on supervised release following his previous incarcerations indicates that a significant sentence is required to adequately deter the defendant from future criminal conduct. See 18 U.S.C. § 3553(a)(2).

As a general matter, the presence of illegally possessed firearms in Brooklyn causes significant suffering and hardship on ordinary residents who try to lead law abiding lives. Without a meaningful and substantial penal consequence for illegal possession of firearms, there is limited incentive for individuals to refrain from carrying and using them. As such, a Guidelines sentence is warranted to deter the defendant and others from contemplating similar acts. See 18 U.S.C. § 3553(a)(2)(B).

IV. Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing in this case, which is a Guidelines term of imprisonment of 120 months for his conviction and 18 months, to be served consecutively, for his violation of supervised release.

                Respectfully submitted,

                BRIDGET M. ROHDE
                Acting United States Attorney

By:   /s/ Andrew C. Gilman
       Andrew C. Gilman
       Assistant U.S. Attorney
       (718) 254-6435

cc:    Clerk of Court (ARR) (by ECF)
       Daniel DeMaria, Esq. (by ECF)
       Vitoria M. Aguilar, U.S. Probation (by E-mail)